UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ARMAUD STIRGUS | * | CIVIL ACTION |
| VERSUS | * | NO. 24-304 |
| SOUTHERN GLAZER'S WINE AND SPIRITS, LLC, SOUTHERN GLAZER'S WINE AND SPIRITS OF LOUISIANA, AND J.J. KELLER & ASSOCIATES, INC. | * | SECTION L |

## ORDER & REASONS

Before the Court is Defendant J.J. Keller & Associates' ("J.J. Keller") 12(b)(6) Motion to Dismiss for Failure to State a Claim. R. Doc. 10. Plaintiff Armaud Stirgus ("Stirgus") opposes the motion. R. Doc. 15. Having considered the briefing and the applicable law, the Court rules as follows.

### I.   BACKGROUND

This case arises from alleged defamatory actions by Defendants J.J. Keller, Southern Glazer's Wine and Spirits of Louisiana, LLC, and Southern Glazer's Wine and Spirits, LLC (the latter two collectively, "Southern Glazer's"). R. Doc. 1-1 at 2. Stirgus alleges that he worked for Southern Glazer's as a commercial driver from August 2015 through December 2021 but that in April 2023, Southern Glazer's and J.J. Keller "acted in concert to publish false, defamatory, and misleading information with the U.S. Department of Transportation Drug and Alcohol Clearinghouse." *Id.* Specifically, he alleges that they reported to the Clearinghouse that he refused to take a drug test on December 23, 2022, a year after he left Southern Glazer's employment. *Id.* Stirgus claims that he has never refused to take a drug test for an employer and that before leaving their employment in December 2021, he alleges a Southern Glazer employee harassed him and

1

accused him of stealing. *Id.*

Stirgus describes that he learned about this after he failed an employment verification screening process with Cardinal Logistics in December 2022. *Id.* at 4.[1] He says he was hired as a commercial driver by another company, Estes Express, in early 2023 who then received the report from the Clearinghouse and, upon seeing that he refused a drug test, fired him. *Id.* at 3. He alleges that Southern Glazer's "knowingly and intentionally sent J.J. Keller falsified information with the intent to use J.J. Keller's services to harm" him and cause issues for his future employment prospects. *Id.* at 2. Stirgus describes that he recalls submitting for a drug test for Southern Glazer's in December 2021, when he still worked for them, and that while he never refused a test, he was "asked to repeat the test multiple times before being allowed to leave the testing site to pick up his three-year-old child from flight assist" at the New Orleans airport. *Id.* at 4.

Stirgus asserts causes of action in defamation and in negligence, seeking monetary damages for wage loss, mental anguish and emotional distress, medical and/or counseling costs, and loss of enjoyment of life. *Id.* at 3-4. He also seeks injunctive relief, asking for Southern Glazer's and J.J. Keller to contact the Clearinghouse and request the false information be corrected or removed. *Id.* at 4.

Stirgus filed suit in the 29th Judicial District Court for St. Charles Parish and Southern Glazer's filed a notice of removal on the basis of diversity jurisdiction.[2] R. Doc. 1. J.J. Keller filed its consent to removal that same day. R. Doc. 4. After all Defendants sought and obtained an extension of time to file responsive pleadings, J.J. Keller filed the instant motion to dismiss. R. Docs. 8, 9, 10.

---

[1] It was Southern Glazer's who reported the test refusal to Cardinal Logistics at this time, while J.J. Keller reported the test refusal to the Clearinghouse in April of 2023. *See* R. Doc. 1-1 at 4; R. Doc. 15-1 at 7.
[2] Stirgus is a resident of Louisiana, the two Southern Glazer entities are LLCs and their members are all residents of Texas or Florida, and J.J. Keller is a Wisconsin corporation. R. Doc. 1 at 3-4.

**II.    PRESENT MOTION**

J.J. Keller filed the instant 12(b)(6) motion alleging that Stirgus has failed to plead facts that defamation, negligence, or injunctive relief and therefore the Court should dismiss his complaint. R. Doc. 13. J.J. Keller notes that Stirgus admits he was told to retake the test in December 2021 and alleges that he did not in fact retake it and that this was the drug test refusal that was reported to the Clearinghouse. *See* R. Doc. 13-1 at 8. Instead, by typo or otherwise, the date was incorrectly reported as 2022. *See id.* at 10-11. J.J. Keller represents that this error was reported to the Clearinghouse and that the Clearinghouse now lists the drug refusal date as December 2021. *Id.*

On the merits of the motion, J.J. Keller first argues that Stirgus does not set forth facts that show J.J. Keller acted with specific malice or intent to cause harm when it submitted the report to the Clearinghouse, and this intent/malice is one of the elements of a defamation claim. *Id.* at 4-5. Absent a factual showing that this element can be satisfied, J.J. Keller argues, Stirgus's defamation claim fails. Further, the complaint only alleges that J.J. Keller "acted in concert to publish false, defamatory, and misleading information," which J.J. Keller argues is conclusory and not sufficient to survive a 12(b)(6) motion. *Id.*

Similarly, J.J. Keller argues that Stirgus fails to plead facts that support a negligence claim, for example by failing to plead any duty owed by J.J. Keller to Stirgus and any breach of that duty. *Id.* at 6-7. Importantly, they allege that Stirgus fails to show that even if the misstated year did amount to a breach, they argue this still fails the cause-in-fact element of a negligence claim because the Clearinghouse regulations require that these reports remain available for five years, even if the employer subsequently reports that the employee complied or was cleared. *Id.* at 7-9. Therefore, even if the refusal were reported in 2021 as intended, J.J. Keller argues that in April

2023, Estes Express would still have seen the report and thus Stirgus fails to show causation between the report and his injuries. *Id.* at 9.

Lastly, J.J. Keller refutes Stirgus's entitlement to injunctive relief, arguing that he cannot meet the requirements of such a drastic and extraordinary remedy. *Id.* at 9-10. Injunctive relief is afforded when the remedy at law is inadequate, and J.J. Keller argues that defamation and negligence, if found, are adequately remedied by monetary relief. *Id.* Further, they argue that Stirgus's claim for injunctive relief is moot because Southern Glazer's and J.J. Keller have already corrected the drug test refusal date with the Clearinghouse. *Id.* at 10-11.

Stirgus filed an opposition arguing that he has adequately pleaded facts to support his defamation and negligence claims against J.J. Keller and that injunctive relief is proper. R. Doc. 15. First, on defamation, Stirgus points to paragraphs IV – VI of his complaint where he alleges that J.J. Keller acted in concert with Southern Glazer's, reported the 2022 date when it knew the date was 2021, and that the Clearinghouse requires drug test refusals to be filed within three business days of the refusal, yet this refusal was filed sixteen months after the alleged refusal. *Id.* at 2-3. Stirgus argues that the complaint need not allege malice itself but merely plead facts that "would give rise to the conclusion that J.J. Keller acted with actual malice," which he argues he has done. *Id.* at 3-4. Stirgus characterizes J.J. Keller's delayed reporting to the Clearinghouse as reckless disregard for the truth because it was reported so long after the alleged test refusal as to give rise to suspicion of its veracity, especially given the requirement that test refusals be reported within three business days. *Id.* at 4-5. He implies that the date was not reported as 2021 because this would have set off alarms at the Clearinghouse given the significant time lapse between the test and the report. *Id.* at 3.

Stirgus argues that his complaint sufficiently pleads facts to support his negligence claim

as well, pointing to the time lapse and the regulations requiring reports within three business days as evidence of breach. *Id.* at 6-7. He also refutes J.J. Keller's argument on the causation element, claiming that had they reported the correct year when they submitted the report on April 20, 2023, the Clearinghouse would have questioned the report "as drug testing does not take 16 months to process." *Id.* at 7. Further, Stirgus alleges that J.J. Keller should have questioned the report because "[a]ny reporting entity in good faith would have questioned the delay in reporting by Southern Glazer's and/or refused to submit the information to the U.S. Department of Transportation for non-compliance with 49 C.F.R. 382.705(b)(1)." *Id.* Therefore, he argues that causation is satisfied because there is a chance this report would have been questioned and/or not reported at all if J.J. Keller had not done so. *Id.*

Last, Stirgus maintains that injunctive relief is proper because courts except the irreparable harm element when there is a showing that there's been a direct violation of a prohibitory law or constitutional right. *Id.* at 8-9. He urges the Court to consider the defendants' violation of the three-business-day requirement as such a violation and that an injunction is an appropriate remedy because he continues to suffer harm to his reputation from the report's existence in the Clearinghouse database. *Id.* at 9-10.

### III. APPLICABLE LAW

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2008)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 556. A claim is plausible

on its face when the plaintiff has pled facts that allow the court to "draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 570. Although a court must liberally construe the complaint in light most favorable to the plaintiff, accept the plaintiff's allegations as true, and draw all reasonable inferences in favor of the plaintiff, *Baker v. Putnal,* 75 F.3d 190, 196 (5th Cir. 1996), courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions*." Arias-Benn v. State Farm Fire & Cas. Co.*, 495 F.3d 228, 230 (5th Cir. 2007) (quoting *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005)).

## IV. ANALYSIS

First, injunctive relief in this case is not appropriate. Equitable relief requires a showing that the remedy at law is inadequate and here, for the defamation and negligence claims Stirgus brings, sufficient remedies at law exist. The Court quickly dispenses with this issue and dismisses Stirgus's claim for an injunction.

However, the Court will not dismiss his claims of defamation and negligence. The Court grounds this finding in the 12(b)(6) standard, which requires courts to liberally construe the complaint in light most favorable to the plaintiff. On negligence, Stirgus adequately sets forth enough facts to allege that J.J. Keller was negligent in reporting this test refusal. He pleads that the report was not only untimely – by sixteen months – but also that it contained the incorrect date. This puts forth enough of an allegation that J.J. Keller was negligent in reporting this information to the Clearinghouse and/or in failing to investigate the untimeliness issues with the report.

These facts similarly support, just barely, a claim for defamation because they plead reckless disregard for the truth. The significant gap of time between the test refusal and report time, along with the statutory requirement that these matters be reported within three business days, should have alerted the company that there may be issues with the report's veracity,

especially a company familiar with these regulations and processes. While sparsely pleaded, the petition just barely sets forth enough facts to survive a 12(b)(6) motion.

Accordingly, J.J. Keller's 12(b)(6) Motion to Dismiss, R. Doc. 10, is **GRANTED IN PART** as to the claim for injunctive relief and **DENIED IN PART** as to the claims of negligence and defamation.

New Orleans, Louisiana, this 22nd day of March, 2024.

_____
United States District Judge